14 F.3d 604
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Nick POPOVICH, Plaintiff-Appellant,
v.
SOMMER ELECTRIC CO., INC. and Kurt Sommer, Defendants-Appellees.
 Nos. 92-3807, 93-2362.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 22, 1993.
Decided Dec. 28, 1993.
 
 1
 Before COFFEY and EASTERBROOK, Circuit Judges, FOREMAN, District Judge*.
 
 ORDER
 
 2
 This case is before us on appeal from the district court's judgment in favor of the defendants in a breach of contract action. For the following reasons, we reverse the district court's decision.
 
 I. Background
 
 3
 Nick Popovich entered into a contract with Kurt Sommer in March 1989 for the purchase of Sommer Electric Company. When the transaction failed to close, Popovich filed a complaint seeking specific performance or breach of contract damages. While this action was pending, the parties purported to settle the lawsuit in August 1989 by entering into a new sales agreement. This new agreement was signed on August 24, 1989, at which time the parties also executed:
 
 
 
 *
 a mutual release, in which the parties released each other from the claims in the lawsuit and the defendant agreed to pay the plaintiff $325,000 ($20,000 immediately and $305,000 when the parties closed on the sale).
 
 
 *
 a letter agreement, which memorialized the fact that Sommer had paid Popovich an additional $36,600 as a sign of his good faith. The document further states that Sommer agreed to provide certain items that Popovich had requested, including an inventory list of all materials and a list of all patterns and drawings.
 
 
 
 4
 The new agreement provided that the sale was to close by October 10, 1989. However, Popovich testified that after these documents were executed, he discovered through his own audit that Sommer had overvalued the inventory. He also learned that Sommer had not turned over all of the blueprints for the company's generators. In addition, the company's secretary-treasurer, Helen Knopp, testified that Sommer let the business go downhill and did nothing to build it back up.
 
 
 5
 Popovich testified that when he learned about the discrepancies in the inventory in late September, he confronted Sommer and reemphasized the fact that he needed an accurate inventory to obtain financing. He stated that on October 8, 1989, Sommer agreed to rectify the situation by paying the plaintiff $170,000 at closing to reflect the difference in valuation. They also agreed to postpone the closing to October 20, 1989.
 
 
 6
 Popovich testified that he memorialized these events in an Amendment to Agreement and sent it to Sommer's attorney in early October.[1] However, he stated that Sommer did not promptly sign and return the agreement. Popovich testified that his attorney and banker called Sommer's attorney trying to get a signed copy of the agreement, but Popovich's banker didn't receive a copy until October 23, 1989. Popovich asserts that by then it was too late because the bank had withdrawn its financing.
 
 
 7
 Following the failure to consummate the sale, Popovich filed a motion for summary judgment in the district court, alleging that the original lawsuit had been settled by the August 24, 1989, agreements and that Sommer was in breach of those agreements.[2] The district court deferred ruling on the motion based upon the parties' suggestion that the matter could be amicably resolved through renewed negotiations for Popovich to purchase the business. When those negotiations proved unsuccessful, the district court set the matter for a bench trial.
 
 
 8
 The district court ultimately found that the defendants were ready, willing and able to consummate the sale in October 1989 and that the plaintiff had not shown by a preponderance of the evidence that he was ready, willing and able to consummate the sale. Therefore, the court found that Popovich had breached the August 24, 1989, agreement and ordered Popovich to return the $56,600 that Sommer had paid to him. Popovich filed this appeal after his motion for a new trial was denied.
 
 II. Analysis
 
 9
 In reviewing a judgment in a bench trial, we follow the rule that the district court's findings of facts "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). "A finding of fact is clearly erroneous only if, after reviewing all the evidence, the appellate court is left 'with the definite and firm conviction that a mistake has been committed.' " United States v. Brown, 900 F.2d 1098, 1102 (7th Cir.1990) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). Upon review of the record in this case, we find that such a mistake has been made.
 
 
 10
 The August 24, 1989, agreement between the parties sets forth several conditions for the sale. See Plaintiff's Exhibit 18. Of particular interest to the pending litigation are paragraphs 8(c) and 13.1. The former provides that "Company and Kurt will use reasonable efforts to preserve Company's business organization intact, to keep available to Company the present services of its employees and to preserve for Company and Nick the goodwill of Company's suppliers, vendors, customers, salesmen and others with whom business relationships exist[.]" Id. p 8(c). Paragraph 13.1 provides that "[b]etween the date of this Agreement and Closing, Kurt and Company will provide Nick ... full access, during reasonable business hours and under reasonable circumstances, to any and all of the premises, properties, contracts, commitments, books, records and other information pertaining to the assets sold by Company under this Agreement as Nick shall from time to time reasonably request." Id. p 13.1.
 
 
 11
 Paragraph 14 provides that Popovich's obligation to close the transaction is subject to the satisfaction of these conditions.[3] Id. p 14. Paragraph 20 further provides that "[t]he parties agree to use their reasonable efforts and to cooperate with one another to effect the transactions contemplated by this Agreement within the terms and provisions herein." Id. p 20.
 
 
 12
 The district court held that the terms of this agreement must be read and construed together with the mutual release and the letter agreement, both of which were executed on the same day as the August 24 agreement, as well as with the terms of the subsequently executed Amendment to Agreement. Accordingly, Popovich's obligation to complete the sale was subject to Sommer's obligation to comply with the additional terms and conditions in the letter agreement, which stated that:
 
 
 13
 To show my good faith, upon signing of the final agreement, I will submit my check made payable to you in the amount of $36,600.00.... I will also submit to you at this time the following items you requested.
 
 
 14
 1. A list of all patterns. All drawings.
 
 
 15
 2. Inventory list of all materials.
 
 
 16
 3. Customer list for the last 5 years with addresses.
 
 
 17
 4. Tax returns for the last 3 years.
 
 
 18
 5. Copy of insurance coverage.
 
 
 19
 6. List of suppliers names and addresses.
 
 
 20
 7. Copy of current plat of survey.
 
 
 21
 The $36,600.00 is to be returned if for some reason the sale of the company is not consummated by Oct. 2, 1989.... It is also clearly understood that the building, land and machinery are being bought by you, as seen, as is. The inventory of materials is as stated in my letter.... The $56,600.00 paid to you is to be credited at closing to any balance due pursuant to the mutual release dated July 19, 1989.
 
 
 22
 Plaintiff's Exhibit 20. Based upon the terms and conditions of all of these agreements, we agree with the appellant that Sommer was obligated to take reasonable efforts to preserve and maintain the business prior to the closing and to provide an accurate inventory and all necessary blueprints as requested by Popovich. These obligations constituted "promissory conditions"--i.e., they were not only a condition precedent to Popovich's performance under the contract but also established certain promises or duties that Sommer was obligated to perform. See Connecticut General Life Ins. Co. v. Chicago Title & Trust Co., 714 F.2d 48, 52 (1983) (applying Illinois law); E. Allan Farnsworth, Contracts Sec. 8.3, at 547 (1982).
 
 
 23
 The plaintiff presented considerable evidence that these conditions had not been met. Helen Knopp testified that the inventory of materials that she prepared in August 1989 did not truly and accurately reflect the actual inventory at Sommer Electric on the date that the document was prepared. Tr. at 31-42. She stated that some of the figures were "guessed at" because an actual inventory was never physically taken. Id. at 31-32. She also stated that the prices listed for certain materials were inflated. Id. at 33-42. Knopp further testified that Sommer provided Popovich with 55 blueprints, some of which were good but others were for obsolete items that were no longer in production. Id. at 48-49. She stated that Sommer withheld about 90 blueprints which related to current generators. Id. at 49.
 
 
 24
 Knopp testified that after the August agreements were signed, Sommer "didn't operate the business. The business was going downhill and he was doing nothing to build it back up again at all; we weren't buying any new materials; we were just using what was there, and that was it." Id. at 49. When asked about Sommer's procedure for filling orders after August 24, 1989, Knopp stated, "We didn't.... Because he was not going to build up the business for Mr. Popovich; that was his comment, not with the lawsuit on." Id. at 49-50. She stated that if an order came in, it would be filed in a drawer; the only orders that were filled were those that came with money or a check attached. Id. at 50.
 
 
 25
 Popovich also testified that Sommer had failed to turn over substantially all of the blueprints needed to manufacture the generators in current production. Id. at 86. Popovich further stated that he hired an independent auditor to verify the August 1989 inventory and that the auditor found $245,000 to $250,000 in discrepancies. Id. at 86-89. He stated that he confronted Sommer with the auditor's findings and on October 8, 1989, Sommer agreed to give him a $170,000 credit on the sale price. Id. at 89. Popovich said he had his attorney prepare the Amendment to Agreement to reflect this credit. Id. He testified that he signed the document as soon as it was prepared, which was the first week in October, but that it was not returned with Sommer's signature until October 23 or 24. Id. at 90-91, 102. He stated that his financing had been withdrawn in the meantime because the bank indicated it could not continue to go on with the delays by the seller. Id. at 91.
 
 
 26
 The district court, in ruling on the plaintiff's motion for a new trial, dismissed this evidence by stating that Helen Knopp's testimony was refuted by Kurt Sommer. However, an examination of the record shows that Sommer's only testimony regarding his compliance with the contractual obligations in dispute in this case was as follows:
 
 
 27
 Q: During the month of October, 1989 were you in a position to complete the sale of Sommer Electric Company to Mr. Popovich?
 
 
 28
 A. Yes.
 
 
 29
 * * *
 
 
 30
 Q. I believe you testified that you were ready, willing and able to consummate this transaction in October of 1989?
 
 
 31
 A. Yes.
 
 
 32
 Q. And were you ready, willing and able to consummate the transaction in November 1989?
 
 
 33
 A. Yes.
 
 
 34
 Q. As far as you know was all of the paperwork completed in regard to the transaction with Mr. Popovich during October and November of 1989?
 
 
 35
 A. Yes.
 
 
 36
 Q. You know why the transaction was not consummated during October or November of 1989?
 
 
 37
 A. Yes, I know.
 
 
 38
 Q. And what was the reason?
 
 
 39
 A. Mr. Popovich did not attend the closing as stated.
 
 
 40
 Q. And when was the closing to take place?
 
 
 41
 A. At three different times.
 
 
 42
 Q. And did he appear at any of those times?
 
 
 43
 A. No, he did not.
 
 
 44
 Q. Did anyone appear in his behalf?
 
 
 45
 A. Nobody did.
 
 
 46
 Q. Mr. Sommer, in accordance with the provisions of Plaintiff's Exhibit 18, which is the agreement of August 24--
 
 
 47
 A. Yes.
 
 
 48
 Q. --you were to perform--you were to furnish certain materials to Mr. Popovich, were you not?
 
 
 49
 A. Yes.
 
 
 50
 Q. And furnish certain information? Were you supposed to furnish him with certain information?
 
 
 51
 A. On July--I mean on--
 
 
 52
 Q. I'll--
 
 
 53
 A. Would you please repeat this once more.
 
 
 54
 Q. Of course. According to the agreement that you're looking at, the one dated August 24, 1989 which is Plaintiff's Exhibit 18--
 
 
 55
 A. 18.
 
 
 56
 Q. --you were to furnish Mr. Popovich with certain information, were you not?
 
 
 57
 A. Yes.
 
 
 58
 Q. Did you furnish all the information that you were required to furnish?
 
 
 59
 A. Yes, I did.
 
 
 60
 Q. Did you do everything in your opinion that you were required to do under that agreement?
 
 
 61
 A. Yes, we sure did.
 
 
 62
 Id. at 123-26.
 
 
 63
 These conclusory statements are insufficient to contradict the detailed testimony of Popovich and Knopp. Although Sommer testified that he turned over all of the information that he was required to furnish under Exhibit 18 (the renewed sales agreement), he does not mention his obligation to furnish certain specific items under the letter agreement. Even if his testimony could be construed to cover the items listed in the letter agreement, Sommer provides only his own opinion or conclusion that he turned over all of the required information. He does not provide any facts to support this conclusion.
 
 
 64
 Moreover, Sommer was required to do more than simply turn over the list of inventory. Paragraph 14 of the August 24 agreement provided that Popovich was not obligated to complete the transaction unless (1) each of the representations and warranties made by Sommer in the agreements was true and correct in all material respects; and (2) all of the agreements, covenants and obligations were duly performed and complied with in all material respects. Thus, Sommer was required to provide a true and correct inventory. Popovich and Knopp provided specific testimony explaining in detail how the inventory that Sommer submitted did not satisfy this condition. Sommer provided no evidence whatsoever to counter these statements. In fact, Sommer admits that he agreed to a $170,000 adjustment in sale price, as reflected in the Amendment to Agreement. Id. at 126. He offers no explanation for this adjustment. Thus, his concession appears to support Popovich's testimony that the adjustment was negotiated to offset the discrepancies in the inventory that Sommer submitted.[4]
 
 
 65
 Finally, Sommer presented no evidence to contradict Knopp's testimony that Sommer had let the business run down and, therefore, failed to comply with his obligation to preserve the business. On appeal, he argues that Knopp's testimony was refuted by the fact that the company still employed four full-time employees in October 1989, which was roughly the same number of employees that had been employed in March of that year. However, there is no evidence that these employees were doing the same amount of work. Thus, the defendants' evidence is insufficient to refute Knopp's direct testimony that Sommer had let the business run down by refusing to fill orders unless they were accompanied by money or a check after August 1989.
 
 
 66
 The district court did not make an express credibility determination based upon its opportunity to observe the witnesses. Thus there is nothing to justify the court's acceptance of Sommer's conclusory statements over the particularized testimony of Knopp and Popovich. In fact, the court's findings regarding Sommer's failure to perform certain conditions of the March 1989 agreement[5] would seem to undermine Sommer's credibility and enhance the credibility of Knopp and Popovich.
 
 
 67
 Based upon this analysis, we conclude that the district court's judgment in favor of the defendants was clearly erroneous. The record shows that Popovich established by a preponderance of the evidence that the defendants had failed to comply with several conditions of the parties' agreement, as memorialized in the three documents signed on August 24, 1989, and the Amendment to Agreement which was executed at a later date. In view of Sommer's failure to comply with these promissory conditions, Popovich was not obligated to complete the transaction and, in addition, is entitled to seek damages for Sommer's breach of his contractual obligations. See E. Allan Farnsworth, Contracts Sec. 8.3, at 547-49 (1982).
 
 III. Conclusion
 
 68
 For the foregoing reasons, we hereby REVERSE the district court's judgment and REMAND this case with directions to find for the plaintiff and to make a determination as to the appropriate amount of damages and attorney fees. The defendants shall be allowed to offset the damages by the $56,600 that was advanced to the plaintiff pursuant to the Mutual Release and the August 24, 1989, letter agreement.
 
 
 
 *
 Judge James L. Foreman, District Judge from the Southern District of Illinois, is sitting by designation
 
 
 [1]
 The exact date that the document was executed is not clear from the face of the agreement. It is entitled "Amendment to Agreement" and states that it is intended to amend the parties' renewed sales agreement of August 24, 1989. But the concluding paragraph ambiguously states: "In Witness Whereof, the parties hereto sign this Amendment to an Agreement, dated the 24th Day of August, 1989, the day and year first above written." Read out of context, this paragraph could be interpreted to mean that the amendment was signed on August 24, 1989. However, that interpretation would directly contradict the testimony of the parties that only three documents--the renewed sales agreement, the mutual release, and the letter agreement--were executed on August 24, 1989. Therefore, it is clear that the amendment was executed at a later date. The exact date is uncertain, although Popovich's undisputed testimony is that he signed it on October 8. The top of the document appears to bear two date and time stamps from facsimile machines. The dates recorded on the document are October 9, 1989, which appears next to the name of Popovich's attorney, and October 10, 1989, which appears next to the notation "Chicago Bar Assn."
 
 
 [2]
 Despite the execution of the Mutual Release on August 24, 1989, the lawsuit was still pending in the district court. The parties had not moved to dismiss the action based upon the settlement. Instead, they informed the court that they were attempting to reach an amicable resolution and, therefore, asked the court to delay the time for the defendants to file an answer to the complaint
 
 
 [3]
 Paragraph 14 provides as follows:
 
 
 [14]
 Conditions to Nick's Obligations. The obligation of Nick to close transactions contemplated by this Agreement is subject to the satisfaction of each of the following conditions on or before the Closing:
 
 
 [14]
 1 Representations and Warranties. Each of the representations and warranties of Company and Kurt in this Agreement shall be true and correct in all material respects at and as of the Closing as though each such representation and warranty were made and delivered at and as of the Closing
 
 
 [14]
 2 Covenants and Obligations. All of the agreements, covenants and obligations to be performed or complied with as of the Closing on the part of Company have been duly performed and complied with in all material respects
 
 
 [4]
 Sommer also failed to provide any evidence to contradict Popovich's testimony that Sommer did not provide an executed copy of the Amendment to the Agreement in time for the rescheduled October 20, 1989, closing date. Therefore, even if adjustment in the sales price could be viewed as an attempt to cure Sommer's breach of his obligation to provide an accurate inventory, his attempt to cure came too late
 
 
 [5]
 In paragraphs 8 and 9 of the findings of fact, the court found:
 
 
 [8]
 At the time the March 1, 1989, Sale Agreement was executed, the defendants represented to Popovich that "the liquidation value of the equipment [is] $542,000."
 
 
 [9]
 The defendants knew at the time they made the representation orally and in writing to Popovich that the equipment value equalled $542,000, that this representation was false and that the true liquidation value of the equipment was $87,510
 In paragraph 10, the court found that "Sommer failed to solicit sales, and take other actions to maintain the business and its subsidiaries in accordance with the sale agreement of March 1, 1989."